# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Michael Rolling, | )     **CASE NO. 1:12 CV 1007** |
|        Petitioner, | ) |
| | )     **JUDGE PATRICIA A. GAUGHAN** |
|     v. | ) |
| | )     <u>**Memorandum of Opinion and Order**</u> |
| Tim Mulligan, *et al.* | ) |
| | ) |
|        Respondents. | ) |

## INTRODUCTION

*Pro se* Petitioner Michael Rolling filed the above-captioned Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2254.  Petitioner is incarcerated in the Marion Correctional

Institution, serving a fifteen year to life sentence for murder.  For the reasons set forth below,

the Petition is denied and this action is dismissed.

## BACKGROUND

Petitioner was indicted on charges of aggravated murder, with one year and three year

firearm specifications, and having a weapon under disability.  *See State of Ohio v. Rolling*, No.

95473, 2011 WL 243981 (Ohio App. 8 Dist. Jan. 13, 2011).  He entered into a plea agreement

on January 27, 2003 under which he pled guilty to the lesser charge of murder in exchange for

dismissal of the firearm specifications and the charge of having a weapon under disability.  *Id.*

A hearing was held on January 27, 2003 on Petitioner's change of plea and sentencing.  In this

hearing, the following exchange took place:

> THE COURT: Mr. Rolling, the crime to which it's proposed that
> you plead guilty is a felony of the first degree, and this particular
> crime has a penalty of from 15 years to life in prison and that's the
> only penalty that you can get.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Upon the completion of your prison term, you will
> be subject to post-release control under the supervision of the
> Ohio Adult Parole Authority.  Do you understand that under your
> post-release control you will be subject to certain terms and
> conditions of that control, and if you violate those conditions then
> the Adult Parole Authority can modify your supervision and make
> it more restrictive, they can incarcerate you for up to one half of
> the original offense –I'm sorry–for up to one-half of the original
> sentence imposed by this court.  You can be charged with a new
> offense, which is called escape, and that's another felony where
> you face additional prison time.  And, of course, if you commit a
> new crime while on post-release control, you would face the
> maximum penalties under the law for that new crime.  Do you
> understand those things pertaining to post-release control?
>
> THE DEFENDANT: Yes. sir.
>
> THE COURT: And your post-release control period would be for
> five years.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have any threats or promises been made to you
> other than what we've talked about in the past few minutes in
> open court and on the record?
>
> THE DEFENDANT:  No.
>
> THE COURT: Do you understand that the sentence–that this
> Court has no discretion in sentencing?  You're gonna get 15 years
> to life?

THE DEFENDANT: Yes.

\*\*\*

THE COURT: Let the record reflect that I'm satisfied that Mr.
Rolling has been informed of his constitutional rights, that he
understands the nature of the charges, the effect of a plea and the
maximum penalties which may be imposed. I also find the
defendant's plea would be made knowingly, intelligently and
voluntarily. Therefore, Mr. Rolling, how do you plead to
amended Count I of the indictment, murder, in violation of Ohio
Revised Code 2903.02, a felony of the first degree?

THE DEFENDANT: Guilty.

(Pet. Ex. 4, ECF No. 1-4 at 3-5.) The court then sentenced Petitioner to fifteen years to life

imprisonment and a term of five years of post-release control.

Ten days after his sentencing hearing, Petitioner filed a Motion to Withdraw his Guilty

Plea on February 6, 2003. In this Motion, he claimed his plea was based on his understanding

that he could be sentenced to probation. *Id.* While the Motion was pending, Petitioner filed a

direct appeal of his conviction. The trial court did not rule on this Motion until Petitioner was

denied relief on direct appeal.

**I. Direct Appeal**

Petitioner filed a Notice of Appeal to the Ohio Eighth District Court of Appeals on

February 25, 2003. He does not specify the grounds he raised on appeal, stating only that he

asserted a "Motion to Withdraw." (Pet. ECF No. 1 at 2). The appeal was summarily dismissed

by the Eighth District Court of Appeals on April 17, 2003.

Petitioner filed a Motion for Leave to file a Delayed Appeal on June 19, 2003. Again,

he does not state the grounds he raised in this Motion. The Eighth District Court of Appeals

-3-

indicated that Petitioner was attempting to appeal his guilty plea. *See State of Ohio v. Rolling*, No. 83051, 2007 WL 1559469 (Ohio App. 8 Dist. May 25, 2007). The court of appeals denied his Motion for Leave to File a Delayed Appeal on July 15, 2003. *Id.* Petitioner did not appeal this decision to the Ohio Supreme Court.

Shortly after filing his Motion for Leave to file a Delayed Appeal, Petitioner filed a Petition to Vacate or Set Aside Sentence in the trial court on June 20, 2003. He contends he asserted counsel misinformed him, failed to investigate his claims, failed to file discovery, failed to inform him of his right to appeal, and was not prepared for trial. With the Petition to Vacate or Set Aside Sentence, Petitioner also filed a Motion for Appointment of Counsel on June 20, 2003. The court granted his Motion for Appointment of Counsel and appointed attorney Elizabeth Kelley to represent him on July 7, 2003. He filed a Motion to Withdraw the Petition on August 5, 2003. The court granted his Motion to Withdraw the Petition on August 11, 2003.

Over two years after his Motion for Leave to file a Delayed Appeal was denied, Petitioner filed an Application to Re-Open his Appeal pursuant to Ohio Appellate Rule 26(b) based on ineffective assistance of appellate counsel on March 19, 2006. *Id.* He claimed Ms. Kelly was appointed on July 7, 2003 for the purpose of assisting him with his appeal. He indicated she did not file an appellate brief and this was the reason his Motion for Delayed Appeal was denied on July 15, 2003. *See State of Ohio v. Rolling*, No. 07-1228 (Ohio Supreme Court filed July 9, 2007).[1] The court of appeals denied the Application to Re-Open Appeal as untimely filed. The court also indicated that an appeal could not be re-opened as Petitioner had

---

[1] Documents filed in the Ohio Supreme Court can be viewed at: http://www.supremecourt.ohio.gov.

-4-

never properly filed an appeal.  The court noted that Petitioner's Motion to Withdraw Guilty

Plea was still pending in the trial court and indicated Petitioner could avail himself of the right

to appeal that judgment should the trial court ever rule on the Motion.  *Id.* at *2.

Petitioner filed an appeal of that decision to the Ohio Supreme Court.  He asserted that

he had been denied the effective assistance of appellate counsel.  He claimed counsel had been

appointed to represent him on appeal but did not contact him or file a brief.  He contended that

this caused his Motion for Leave to File a Delayed Appeal to be dismissed in July 2003.  He

claimed he had good grounds for appeal as he was led by his trial counsel to believe he was

pleading guilty to involuntary manslaughter and would receive only six years incarceration.

The Ohio Supreme Court declined to accept jurisdiction on October 19, 2007.

### II.  Post Judgment Motions

Shortly thereafter, on November 30, 2007, Petitioner filed in the trial court a Request for

Adjudication of his Pending Motion to Withdraw Guilty Plea.  After several extensions by the

State to file a response to the Motion, Petitioner filed a new Motion to Withdraw Guilty Plea on

March 27, 2008.  In this Motion, he asserted that the trial court failed to comply with Ohio

Criminal Procedure Rule 11, and his guilty plea was based on a misunderstanding that he could

be released after serving two years of his sentence of fifteen years to life.  *See State of Ohio v.

Rolling*, No. 11-0265 (Ohio Supreme Court filed Feb14, 2011).   Counsel was appointed to

represent Petitioner for adjudication of the Motion.  The trial court conducted a hearing on the

Motion and issued an Order on May 20, 2008 indicating that a hearing had been held,and based

on the arguments of counsel, the Motions, and the transcript of the plea colloquy, the court

found the Petitioner's plea was knowingly, voluntarily, and intelligently made.  Specifically, the

-5-

court stated:

> The defendant was informed of his rights pursuant to Criminal
> Rule 11.  The court specifically informed the defendant of his
> constitutional rights and the maximum penalty involved.  He was
> asked if any promises were made to him and he answered "no."
> He was asked if he understood the penalty he stated "yes."  The
> court does not find the defendant meets the standard of manifest
> injustice that would allow withdrawal of his guilty plea.  Motion
> denied.

(Pet. Ex. 1, ECF No. 1-1 at 3).  Petitioner did not immediately appeal this decision.

Two years later, on June 1, 2010, Petitioner filed a Motion for Resentencing in the trial

court.  In this Motion, he claimed his sentence was void because it included a term of post-

release control.  Pursuant to Ohio Revised Code § 2967.13, post-release control is not applicable

to murder convictions.  He also asked for a *de novo* re-sentencing hearing pursuant to Ohio

Revised Code §2929.191, and *State v. Singleton*, 124 Ohio St. 3d 173 (2009).  The trial court

issued a *nunc pro tunc* entry on June 28, 2010, deleting the five-year post-release control

sentence and replacing it with parole.  The Motion for Re-sentencing *de novo* was denied.

Petitioner filed an appeal on July 28, 2010 of the denial of his Motion for Re-sentencing

and his Motion to Withdraw Guilty Plea to the Ohio Eighth District Court of Appeals.[2]  He

---

[2]  It is not clear whether this appeal was taken of only the Motion for Re-sentencing or of both
the Motion for Re-sentencing and the Motion to Withdraw Guilty Plea.  The appeal was taken two
years after the Motion to Withdraw Guilty Plea had been denied, and asserted grounds relevant to
the inclusion of post-release control in Petitioner's sentence which were raised in Petitioner's
Motion for Re-sentencing.  The Court of Appeals, however, states, "In this *pro se* appeal,
defendant-appellant, Michael Rolling, appeals from the order of the trial court that denied his
motion to withdraw his guilty plea and deleted an erroneously included term of post-release control
in a *nunc pro tunc* order."  The Court of Appeals also cites language from the trial court's Order
denying Petitioner's Motion to Withdraw Guilty Plea in its discussion of the case's procedural
history.  This Court will, therefore, assume that the appeal encompassed both of Petitioner's
Motions.

-6-

asserted two assignments of error:

> 1. The trial court erred by failing to grant defendant a *de novo* hearing on re-sentencing pursuant to Ohio Revised Code §2929.191, and *State v. Singleton*, 124 Ohio St. 3d 173 (2009);

> 2. The trial court's plea colloquy did not substantially comply with the applicable criminal procedure rule and remand is required to permit determination of whether the defendant was prejudiced by the trial court's failure to substantially comply with Crim. R. 11(C)(2)(c).

*See State of Ohio v. Rolling*, No. 95473, 2011 WL 243981 (Ohio App. 8 Dist. Jan. 13, 2011).

The court of appeals affirmed the decisions of the trial court on January 13, 2011. The court found that the *Singleton* case applied only to offenders who did not receive notice at sentencing that they would be subject to post-release control, those who did not receive notice that a prison term could be imposed for violation of post-release control sanctions, and those who did not have these provisions incorporated into their sentencing entries. *Id.* at \*2. Petitioner did not fall into any of these categories. The court denied his second assignment of error stating that Petitioner was subject to a life sentence. The erroneous reference to post-release control in no way added to the maximum penalty Petitioner faced. The court added that Petitioner did not argue that he would have pled not guilty if he had known he was not subject to post-release control. Finally the court noted that this matter could have been asserted seven years earlier in a direct appeal and was barred by the doctrine of *res judicata. Id.* at \*5.

Petitioner appealed this decision to the Ohio Supreme Court on February 14, 2011. He asserted two Propositions of Law in support of his appeal:

> 1. Did the trial court err by failing to grant Defendant a *de novo* hearing upon resentencing, pursuant to Ohio Revised Code §2929.191 and *State v. Singleton*, 124 Ohio St. 3d. 173 (2009);

-7-

> 2.  Did the trial court's plea colloquy fail and violate Defendant's
> constitutional right when the colloquy did not substantially
> comply with the applicable criminal procedure rule and remand is
> required to permit determination of whether the defendant was
> prejudiced by the trial court's failure to substantially comply with
> Crim. R. 11(C)(2)(c)?

(Pet. ECF No. 1 at 4).  In his Memorandum in Support of Jurisdiction, he claimed that the trial

court's inclusion of post-release control in his sentence required the court to conduct a new

sentencing hearing.  The error could not be corrected with a *nunc pro tunc* order.  He also

claimed the erroneous inclusion of a term of post-release control rendered his plea involuntary

and not knowingly and intelligently made.  He claimed he believed he would receive a two year

sentence and probation if he pled guilty.  He equated probation with post-release control and

argued that it demonstrated prejudice at his plea hearing.  The Ohio Supreme Court denied leave

to appeal, and dismissed the appeal as not involving any substantial constitutional question on

May 26, 2011.

### HABEAS PETITION

Petitioner then filed the within Petition for a Writ of Habeas Corpus pursuant to 28

U.S.C. §2254 on April 23, 2012.  He asserts three grounds for relief:

> 1.  Denied access to the courts in violation of Sixth Amendment
> of the United States Constitution, Due Process and Equal
> Protection along with denial of Petitioner's constitutional right to
> a fair trial under the 14th Amendment;
>
> 2.  Conviction obtained by guilty plea which was unlawfully
> induced or not made voluntarily, knowingly, intelligently with the
> understanding of the nature and of the consequences of the plea;
> and
>
> 3.  Denied the effective assistance of counsel.

(Pet. ECF No. 1 at 5-6).

With respect to his first ground for relief, Petitioner contends he was present at a hearing on April 18, 2008 on his Motion to Withdraw Guilty Plea.  He states the court's Order denying his Motion on May 20, 2008 reflects that a "hearing [was] held on Defendant's Motion... ." He interprets this statement to indicate a second hearing was held by the court on May 20, 2008 before it issued its decision.  He asserts he was not present at this hearing and no transcript of the hearing exists.  He claims the court violated Ohio Criminal Procedure Rule 43(A) and denied him access to the courts, due process, and equal protection.

In support of his second ground for relief, Petitioner asserts three claims.  First, he alleges he was promised a shorter sentence by his trial counsel.  He contends his trial counsel told him he would be sentenced only to six years incarceration on a charge of involuntary manslaughter.  Second, he asserts that the trial court erred by telling him he would be subject to post-release control upon completion of his sentence of incarceration.  He claims that because post-release control cannot be part of an indefinite life sentence for murder, his plea could not have been knowingly and intelligently made.  Finally, Petitioner contends that because post-release control was erroneously made part of his original sentence, his entire sentence was void. He contends he is entitled to an evidentiary hearing to determine if his plea was made in accordance with Ohio Criminal Procedure Rule 11.

In support of his third ground for relief, Petitioner asserts five claims of ineffective assistance of trial counsel.  First, he contends his trial counsel failed to inform the court that his plea agreement did not include a period of post-release control, and his plea of guilty was, therefore, not knowing and voluntarily made.  Second, he contends counsel failed to object to

-9-

the post-release control portion of his sentence and did not advise him of his right to appeal.

Third, he claims counsel failed to inform him of the term of post-release control prior to his plea

hearing.  He asserts he would not have pled guilty if he had known he was going to be subject to

post-release control.  Fourth, he claims counsel led him to believe he would be sentenced to six

years for involuntary manslaughter.  He contends he would not have pled guilty if he had known

he would be sentenced to more than six years incarceration.  Finally, he claims counsel failed to

raise any obvious defense to the murder charge.

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

amended 28 U.S.C. § 2254, was signed into law on April 24, 1996 and applies to habeas corpus

petitions filed after that effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see*

*Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir.

1999).  The AEDPA was enacted "to reduce delays in the execution of state and federal criminal

sentences, and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538

U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)).  Consistent with this goal,

when reviewing an application for a writ of habeas corpus by a person in custody pursuant to

the judgment of a state court, a determination of a factual issue made by a state court shall be

presumed to be correct.  *Wilkins v. Timmerman-Cooper*,  512 F.3d 768, 774-76 (6th Cir. 2008).

The Petitioner has the burden of rebutting the presumption of correctness by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1).  A federal court, therefore, may not grant habeas

relief on any claim that was adjudicated on the merits in any state court unless the adjudication

of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774 -76 (6th Cir. 2008).

A decision is contrary to clearly established federal law under §2254(d)(1) when it is "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In order to have an "unreasonable application of ... clearly established Federal law," the state court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id.* at 409. The provision applies even in cases where the state courts summarily reject a claim or issue a ruling "unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 131 S.Ct. 770, 784–85 (2011). Furthermore, it must be contrary to holdings of the Supreme Court, as opposed to dicta. *Williams*, 529 U.S. at 415.

A state court's determination of fact will be unreasonable under §2254(d)(2) only if it represents a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). In other words, a state court's determination of facts is unreasonable if its finding conflicts with clear and convincing evidence to the contrary. *Id.* "This standard requires the federal courts to give considerable deference to state court decisions." *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir.2007). AEDPA essentially requires federal courts to leave a state court judgment alone unless the judgment in place is "based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

In addition, a federal court may not grant a Petition for a Writ of Habeas Corpus filed by

a person in state custody unless "it appears that ... the applicant has exhausted the remedies available in the courts of the state...." 28 U.S.C. § 2254(b)(1)(A); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (per curiam); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994).  Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

To be properly exhausted, each claim must have been "fairly presented" to the state courts.  *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003).  Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim.  *Wagner*, 581 F.3d at 414. Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).  Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  It cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court.  *Id.*  This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner*, 581 F.3d at 414.

**<u>DISCUSSION</u>**

**I.  First Ground for Relief**

-12-

Petitioner's first ground for relief contends he was denied access to the courts, due process, and equal protection at a hearing for his Motion to Withdraw Guilty Plea.  A hearing on the Motion was held on April 18, 2008.  The court issued its Order on May 20, 2008 denying the Motion, and indicating that a "hearing [was] held on Defendant's Motion... ."  Petitioner interprets this statement to indicate that a second hearing was held by the court on May 20, 2008 before it issued its decision.  He asserts he was not present at this hearing and no transcript of the hearing exists.  He claims the court violated Ohio Criminal Procedure Rule 43(A) and denied him access to the courts, due process, and equal protection.

This claim is unexhausted.  It is raised for the first time in this Petition and was never presented in a state court proceeding.  A claim raised in a habeas petition must be "properly presented" to the state courts in a procedural context where a merits review is possible. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  Because Petitioner did not give the state courts the opportunity to determine if a second hearing on the Motion was actually held without Petitioner being present and if this was in fact a denial of access to the courts or due process, he has not fulfilled the exhaustion requirement needed to obtain federal court review of the claim in his habeas petition.

Generally, if a claim is unexhausted, the Court will dismiss the Petition without prejudice to allow the Petitioner to return to state court to pursue his available remedies.  28 U.S.C. § 2254(c); *Rose v. Lundy*, 455 U.S. 509 (1982).  Where there are no remedies still available in state court to assert the claim, and return to state court, therefore, would be futile, the Court may deem the claim procedurally defaulted.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Rust v. Zent*, 17 F.3d 155, 160

-13-

(6th Cir. 1994).

A federal habeas petitioner can procedurally default a claim by "failing to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim." *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (quoting *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir.2000)). When a claim is procedurally defaulted, federal habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, Petitioner did not assert this ground for relief in any state court proceeding while those remedies were available to him.  This claim pertains to his alleged exclusion from a hearing Petitioner contends was held in May 2008 on his Motion to Withdraw Guilty Plea.  He did not raise this claim in the trial court, nor did he raise it in an appeal of the Order denying his Motion to Withdraw Guilty Plea.  Furthermore, there is no procedural avenue in state court in which Petitioner can now raise this claim four years after the hearing.  This claim is procedurally defaulted.

Petitioner can overcome a procedural default by showing (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Hutchison v. Bell*, 303 F.3d 720, 735 (6th Cir. 2002); *Combs v. Coyle*, 205 F.3d 269, 274-75 (6th Cir. 2000).  "[T]he

-14-

existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 484 (1986). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.' " *Hargrave–Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir.2004) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)).  To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

The Petition does not suggest any factor external to the defense that precluded him from raising this claim to the trial court or on appeal of the denial of his Motion to Withdraw Guilty Plea.  The hearing which forms the basis of this claim was referenced in the court's Judgment Entry of the Order denying the Motion.  The Judgment Entry and the reference to the hearing appeared on the court's docket on May 22, 2008.  The information was available to Petitioner through the Judgment Entry and the court's docket.  Moreover, he was represented by counsel for the adjudication of this Motion.  He was not precluded from raising the claim by factors beyond his control.  He, therefore, has not demonstrated cause and prejudice.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386,

392 (2004) (citing *Murray*, 477 U.S. at 495-96).  Petitioner does not claim he is innocent of the underlying conviction.  He contends here that a hearing on his Motion to Withdraw Guilty Plea was conducted without him being present.  This is not sufficient to demonstrate a fundamental miscarriage of justice occurred as a result of this procedural default.

## II. Second Ground for Relief

In his second ground for relief, Petitioner asserts that his conviction was obtained by a guilty plea which was unlawfully induced or not made voluntarily, knowingly, or intelligently with the understanding of the nature and of the consequences of the plea.  In support of this claim, he asserts three arguments.  First, he alleges he was promised a shorter sentence by his trial counsel.  He contends his trial counsel told him he would be sentenced only to six years incarceration on a charge of involuntary manslaughter.  Second, he asserts that the trial court erred by telling him he would be subject to post-release control upon completion of his sentence of incarceration.  He claims that because post-release control, by Ohio law, cannot be part of an indefinite life sentence for murder, his plea could not have been knowingly and intelligently made.  Finally, Petitioner contends that because post-release control was erroneously made part of his original sentence, his entire sentence was void.  He contends he is entitled to an evidentiary hearing to determine if his plea was made in accordance with Ohio Criminal Procedure Rule 11.

### A. Trial Counsel Promised Shorter Sentence

Petitioner first alleges that he pled guilty because his attorney promised him a shorter sentence of six years incarceration for manslaughter and his plea was, therefore, not voluntarily, knowingly, and intelligently made. This claim also is unexhausted.

-16-

Petitioner did not pursue this claim to completion through a direct appeal of his conviction.  Although there is no indication in the Petition of the grounds Petitioner asserted in his first direct appeal, that appeal was summarily dismissed on April 17, 2003.  Similarly, he does not indicate the grounds he raised in his Motion for Leave to file a Delayed Appeal; however, the court of appeals denied the Motion and he did not appeal that decision to the Ohio Supreme Court.  His Application to Re-Open his Appeal pursuant to Ohio App. R. 26(b) asserted a claim for ineffective assistance of appellate counsel, which was also denied on procedural grounds as untimely.  The Ohio Supreme Court declined jurisdiction to hear the appeal.

Furthermore, the claim was not exhausted in post-conviction motions.  His first Motion to Withdraw Guilty Plea asserted that his plea was involuntary because counsel led him to believe he would be sentenced to probation.  His second Motion to Withdraw Guilty Plea asserted that his plea was based on counsel's representations that he would be released after serving two years of his sentence of fifteen years to life incarceration. The trial court considered these Motions, reviewed the plea colloquy and determined that Petitioner was informed of the maximum penalty and indicated he understood it, and his plea was, therefore, knowingly and intelligently made.  He did not raise this ground on appeal of the denial of that Motion.  Consequently, this claim is unexhausted.

Furthermore, Petitioner has no apparent remedy still available to him to pursue this claim in state court.  His direct appeals have been foreclosed and he has no other post conviction remedies left to pursue.  He already filed a post-conviction petition in June 2003, which he voluntarily withdrew in August 2003, two Motions to Withdraw Guilty Plea, and a

-17-

Motion for Re-sentencing.  If Petitioner attempted to file a second petition for post-conviction relief under Ohio Revised Code § 2953.23, it would be successive and untimely.  Under Ohio Revised Code § 2953.21(A), Ohio courts cannot entertain a successive or untimely post-conviction petition unless: (1) the Petitioner shows that he was unavoidably prevented from discovery of the facts upon which he must rely to present the claim for relief, or after the time limitation expired, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the Petitioner's situation, and the post-conviction petition asserts a claim based on that right; and (2) Petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact-finder would have found the Petitioner guilty of the offense of which the Petitioner was convicted.  Ohio Revised Code § 2953.23(A)(1).  Here, Petitioner claims his plea was not voluntarily, knowingly, and intelligently made because his trial counsel promised he would receive a shorter sentence.  He was well aware of this fact at the time of his conviction and could have asserted this claim in his Motions to Withdraw Guilty Plea and the appeals of the denial of these Motions.  It would be futile for Petitioner to return to state court to pursue this claim through direct appeal or post conviction remedies.  It is therefore procedurally defaulted.

The Court may excuse the default and consider the claim on the merits if Petitioner demonstrates that (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review.  *See Maupin*, 785 F.2d. at 138; *Hutchison*, 303 F.3d at 735; *Combs*, 205 F.3d at 274-75.  To establish "cause", Petitioner must show that some objective factor beyond the defense's control impeded his efforts to comply

-18-

with the State's procedural rule.  *Murray*, 477 U.S. at 484.  To establish "prejudice", Petitioner

must demonstrate that the constitutional error "worked to his actual and substantial

disadvantage."  *Perkins*, 58 F.3d at 219.

Petitioner's only assertion of "cause" for the default is that attorney Kelley failed "to file

any brief to protect Petitioner's rights on appeal."  (Pet. ECF No. 1 at 6).   As an initial matter, it

is not clear whether Ms. Kelley was appointed to represent Petitioner on appeal or in connection

with his post-conviction petition which he filed in conjunction with his Motion for Appointment

of Counsel.  Assuming Petitioner is correct that her appointment was as his appellate counsel, it

would not form the basis for "cause" for his failure to timely assert this claim.  Petitioner filed

his Motion for Leave to File a Delayed Appeal on June 13, 2003.  Ms. Kelley was appointed on

July 7, 2003.  The court of appeals denied the Motion for Leave to File a Delayed Appeal on

July 15, 2003.  She represented him for only eight days.  She did not represent him at the time

he filed his post conviction Motions to Withdraw Guilty Plea, in which he asserted varying

sentence lengths he was promised by trial counsel in exchange for his guilty plea.  There is no

indication of cause or prejudice to excuse the default and on that basis this claim must be

dismissed.

Furthermore, even if review of this claim were not barred by procedural default, it would

be without merit.  Because a guilty plea operates as a waiver of constitutional rights, the

Fourteenth Amendment's Due Process Clause requires that a guilty plea not only be made

voluntarily, but also knowingly and intelligently "with sufficient awareness of the relevant

circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)

(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  *See Boykin v. Alabama*, 395 U.S.

238, 242 (1969); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994). Voluntariness is determined

by analyzing whether the plea was obtained "by any sort of threats or violence, ... any direct or

implied promises, ... [or] the exertion of any improper influence." *Brady*, 397 U.S. at 753

(internal quotation and citation omitted). The question of whether a plea was entered knowingly

and intelligently turns on whether the defendant understood the nature of the charges against

him and was "aware of the direct consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153

(6th Cir.1994).

The Supreme Court has held that a guilty plea satisfies due process if it appears on

consideration of "all the relevant circumstances surrounding" the plea, that it was entered "by

one fully aware of the direct consequences, including the actual value of any commitments

made to him by the court, prosecutor, or his own counsel," and was not induced by threats,

misrepresentation, or promises that are by their nature improper.[3] *Brady*, 397 U.S. at 749, 755 .

In *Brady*, the Court emphasized:

> The rule that a plea must be intelligently made to be valid does
> not require that a plea be vulnerable to later attack if the defendant
> did not correctly assess every relevant factor entering into his
> decision. A defendant is not entitled to withdraw his plea merely
> because he discovers ... after the plea has been accepted that his
> calculus misapprehended the quality of the State's case or the
> likely penalties attached to alternative courses of action.

---

[3]     A collateral consequence of a plea, in contrast to a direct consequence, is "one that remains beyond the control and responsibility of the...court in which that conviction was entered." *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002). *See Kratt v. Garvey*, 342 F.3d 475 (6th Cir.2003)(holding that revocation of a defendant's pilot's license was a collateral consequence of the defendant's guilty plea to drug charges where the revocation was effected by the Federal Aviation Administration more than a year and a half after the defendant pleaded guilty before the court).

Relying on *Brady*, the Court reiterated in a subsequent decision that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002). The Court pointed out that, "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences by invoking it." *Id*. at 629; *see Iowa v. Tovar*, 541 U.S. 77, 92, (2004).

On federal habeas review, a "state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness" under 28 U.S.C. § 2254(e)(1), which is "rebuttable only by clear and convincing evidence." *Wright v. Lafler,* No. 05-2571, 2007 WL 2566042, at *3 (6th Cir. Sept. 5, 2007)(citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993)).  Petitioner filed two Motions to Withdraw Guilty Plea and received a hearing with counsel representing him.  He produced a copy of the transcript of his plea colloquy.  In pertinent part, it shows the following exchange:

> THE COURT: Mr. Rolling, the crime to which it's proposed that you plead guilty is a felony of the first degree, and this particular crime has a penalty of from 15 years to life in prison and that's the only penalty that you can get.  Do you understand that?
>
> THE DEFENDANT: Yes.

Later in the proceeding, the trial court once again asks:

-21-

>THE COURT: Have any threats or promises been made to you
>other than what we've talked about in the past few minutes in
>open court and on the record?
>
>THE DEFENDANT:  No.
>
>THE COURT: Do you understand that the sentence–that this
>Court has no discretion in sentencing?  You're gonna get 15 years
>to life?
>
>THE DEFENDANT: Yes.

Although he argued in his Motions to Withdraw Guilty Plea that his plea was not knowingly

and intelligently made because his attorney promised he would be sentenced to either probation

or to only two years incarceration, the trial court rejected the argument stating:

>The defendant was informed of his rights pursuant to Criminal
>Rule 11.  The court specifically informed the defendant of his
>constitutional rights and the maximum penalty involved.  He was
>asked if any promises were made to him and he answered "no."
>He was asked if he understood the penalty he stated "yes."  The
>court does not find the defendant meets the standard of manifest
>injustice that would allow withdrawal of his guilty plea.  Motion
>denied.

(Pet. Ex. 1, ECF No. 1-1 at 3).  His assertion in this habeas petition that he pled guilty because

he was led to believe he would receive a shorter sentence of six years incarceration for

manslaughter is insufficient to rebut the presumption of correctness given to the state court's

factual determination that his guilty plea was valid.

### B.  Post-release Control as Part of Sentence

Petitioner also asserts that his plea was not voluntarily and knowingly made because he

was incorrectly told by the trial court that he would be subject to post-release control upon his

release from prison.  He claims that because post-release control cannot be part of an indefinite life sentence for murder under Ohio Law, his plea could not have been knowingly and intelligently made.  He also asserts he would not have pled guilty if he had known post-release control was part of the sentence.

This claim was not "fairly presented" to the state courts and is, therefore, unexhausted. Petitioner asserted a claim in the state courts pertaining to the trial court's erroneous inclusion of post-release control as part of his sentence, but raised this claim solely as a violation of state law. In his appeal of his Motion for Re-sentencing to the Ohio Eighth District Court of Appeals and then to the Ohio Supreme Court, Petitioner asserted that "the trial court's plea colloquy did not substantially comply with the applicable criminal procedure rule and remand is required to permit determination of whether the defendant was prejudiced by the trial court's failure to substantially comply with [Ohio] Crim. R. 11(C)(2)(c)."  In this federal habeas petition, he now asserts that the error at sentencing caused his plea to be not voluntarily, knowingly, and intelligently made in violation of the Fourteenth Amendment of the United States Constitution.

To be considered "fairly presented," the claim must be submitted to the state courts as a federal constitutional claim, not merely as an issue arising under state law.  *Koontz*, 731 F.2d at 369.  The claim must also be presented to the state courts under the same legal theory in which it is later presented in federal court.  *Wong*, 142 F.3d at 322.  Whether the trial judge adequately satisfied the mandates of Ohio Criminal Procedure Rule 11 is a matter of state law.  Petitioner now asserts this claim as a violation of federal constitutional law, which is a different question than the one presented to the state courts.  The claim of a Fourteenth Amendment violation is therefore unexhausted.

-23-

Again, it would be futile to send Petitioner back to state court to pursue this claim. The Ohio Court of Appeals noted that because the support for this claim could be found on the record of his conviction and sentencing, the claim could have and should have been raised in a direct appeal.  Petitioner was, therefore, barred by the doctrine of *res judicata* from asserting the claim in a collateral proceeding.  *See State of Ohio v. Rolling,* No. 95473, 2011 WL 243981 at *5.  Petitioner's attempts to file a delayed direct appeal and to re-open his direct appeal were both denied.  He has no available remedy left in state court.  This claim is, therefore, procedurally defaulted.

Moreover, Petitioner did assert this claim as a matter of state law through post-conviction motions.  The doctrine of *res judicata* would also foreclose any further attempt to file another post conviction motion to assert this same claim under a new legal theory.  *See Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995).

Petitioner does not demonstrate cause and prejudice to excuse the default.  His only assertion of cause for failing to raise claims in the state court was that Attorney Elizabeth Kelly failed to file an appellate brief in his direct appeal in 2003.  Even if that is true, Petitioner waited until March 2006 to file a Motion to Re-Open Appeal Pursuant to Appellate Rule 26(b) based on ineffective assistance of appellate counsel, and waited until June 2010 to claim that the trial court erroneously sentenced him to post-release control instead of parole.  He fails to show that Ms. Kelly was the cause for his failure to file this claim in a timely manner or that he was prejudiced in pursuing this claim due to her actions.  On that basis alone, review of the claim is foreclosed by the default.

Furthermore, even if review of the claim were not foreclosed, it would dismissed on the

-24-

merits.  Petitioner asserts that the erroneous reference to post-release control instead of parole rendered his guilty plea not knowingly and intelligently made because, by Ohio law, he could not receive post-release control.  A plea is entered knowingly and intelligently if the defendant understands the nature of the charges against him and is "aware of the direct consequences of the plea." *King*, 17 F.3d at 153.  A guilty plea satisfies due process if it was entered "by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Brady*, 397 U.S. at 749, 755 .

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir.2009) ("While a defendant need not know all the possible consequences of his plea, like the loss of his right to vote or own a gun, or the effect of a future sentence, he must be aware of the maximum sentence to which he is exposed.").  *See King*, 17 F.3d at 154; *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.1991). On the other hand, the trial court is not obligated to provide information to the defendant about his parole eligibility. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); *see also King*, 17 F.3d at 154 (finding that on entering a guilty plea, "a defendant need not be informed of the details of his parole eligibility, including the possibility of being ineligible for parole").

Here, Petitioner contends that the trial court erroneously advised him that he would be subject to post-release control sanctions rather than parole.  In Ohio, defendants convicted of

-25-

certain classified felonies are subject under Ohio Rev. Code § 2967.28 to a mandatory term of post-release control, which the Ohio Supreme Court has defined as "a period of supervision that occurs after a prisoner has served his or her prison sentence and is released from incarceration, during which the individual is subject to specific sanctions with which he or she must comply." *See State v. Clark*, 119 Ohio St.3d 239, 246 (2008). Violations of post-release control conditions "may result in additional punishment, such as a longer period of control, more restrictions during the control period, or a prison term of up to nine months per violation, subject to a cumulative maximum of one-half of the original stated prison term." *Id.* Post-release control begins only when the incarceration portion of the sentence has been completed and violation of the terms of supervision may operate to add a second term of incarceration. *Id.*

Parole, like post-release control, is a form of supervised release. *Id.* That, however, is where the similarity ends. When a person is paroled pursuant to Ohio Rev. Code §2967.13, "he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release." *Id.* If a paroled person violates a condition imposed with release on parole, he or she may be required to serve the remainder of the original sentence." *Id.* Moreover, parole is not guaranteed once a prisoner has met the minimum eligibility requirements, but rather is a matter within the state parole authority's "wide-ranging discretion" to refuse or grant. *Id.* Because parole is not mandatory and cannot serve to lengthen the defendant's custody status beyond the original sentence that was imposed, it is not considered "part of the maximum possible penalty," which must be disclosed in a plea colloquy. *See id.*; *Hill*, 474 U.S. at 56; *King*, 17 F.3d at 154.

Here, Petitioner was sentenced to an indefinite prison term of fifteen years to life.

-26-

Because post-release control supervision cannot begin until Petitioner's stated prison term has been served, Petitioner could not be subject to post-release control until he served his life sentence.  The trial court recognized its error and corrected its judgment entry *nunc pro tunc* to reflect that Petitioner was eligible for supervised release on parole after serving the minimum of his indefinite sentence.  The effect for Petitioner, however, was the same.  The maximum term of incarceration which he can be made to serve under post-release control or parole is life in prison.

Moreover, Petitioner does not suggest that the trial court's erroneous use of the term post-release control instead of parole misled him to believe the maximum term of imprisonment he faced was less than a life term.  A habeas petitioner is not entitled to collateral relief unless he or she demonstrates the existence of an error of constitutional magnitude which "had substantial and injurious effect or influence" on the guilty plea.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Petitioner does not claim he relied on the inclusion of post-release control in making his decision to plead guilty.  In fact, he asserts he would not have pled guilty if he had known he was going to be sentenced to post-release control.  He does not allege he was misled by post-release control as an indication he would receive a lighter sentence.

Petitioner cites *United States v. Reader*, No. 06-2385, 2007 WL 3390931, at *2 (6th Cir. Nov. 13, 2007), as support for his assertion that the inclusion of an erroneous term of post-release control renders his plea not knowingly and intelligently made.  The *Reader* case differs from the case at hand in several important and material ways.  Mr. Reader was in trial in federal court on charges of possession of child pornography.  At Reader's plea hearing, the magistrate judge twice repeated that "[i]f you're convicted of this offense, you face up to ten years in

-27-

prison; [and] up to three years thereafter of supervised release."  After Reader pled guilty, the

Probation Office prepared Reader's Presentence Investigation Report ("PSR"), which correctly

stated that "[i]f a term of imprisonment is imposed, the Court may impose a term of supervised

release of life." The Sixth Circuit determined that a term of supervised release of three years

after completion of ten years of incarceration was significantly different from a term of

supervised release for life after completion of ten years of incarceration and significantly altered

the maximum sentence Reader could receive.  The court determined this error therefore called

the validity of his plea into question.  Unlike Reader, Petitioner's maximum sentence was not

affected by the erroneous inclusion of post-release control.  He merely asserts that the court

made an error and this error should have resulted in a new sentencing hearing, not just a

correction of his judgment to reflect he was subject to parole.  This would not call into question

the voluntariness of his plea.

### C. Entire Sentence is Void

In the third part of his second ground for relief, Petitioner asserts that because post-

release control was erroneously made part of his original sentence rather than parole, his entire

sentence is void.  He contends he is entitled to an evidentiary hearing to determine if his plea

was made in accordance with Ohio Criminal Procedure Rule 11.

This claim also was not fully exhausted in the state courts.  Petitioner filed a Motion for

Re-sentencing pursuant to Ohio Revised Code §2929.191 in which he maintained that his

sentence was void because it included a term of post-release control in violation of Ohio law.  In

response, the trial court issued a *nunc pro tunc* order that denied the Motion for Re-sentencing

and stated: "Delete five years post-release control and replace with parole."  *See State v.*

*Rolling*, No. 95473, 2011 WL 243981 at *1-2.  He appealed the denial of his Motion but instead of raising his argument that his entire sentence was void, he focused on the *nunc pro tunc* order and asserted that the trial court erred by failing to grant him a *de novo* hearing on re-sentencing pursuant to Ohio Revised Code §2929.191, and  *State v. Singleton*, 124 Ohio St. 3d 173 (2009). In *Singleton*, the Ohio Supreme Court instructed courts to follow the procedures set forth in Ohio Revised Code §2929.191 to correct the failure to properly impose post-release control by conducting a hearing on the imposition of post-release control prior to correcting the judgment *nunc pro tunc*.  Petitioner did not assert that his sentence was void.  Similarly, his appeal to the Ohio Supreme Court also focused on the *nunc pro tunc* order and asserted he should have been granted a *de novo* hearing on re-sentencing pursuant to Ohio Revised Code §2929.191, and *State v. Singleton*, 124 Ohio St. 3d 173 (2009). Again, he did not argue that his sentence was void due to the inclusion of post-release control in any other filing in state court.  His claim that his sentence was void was not exhausted in the state courts.

Further, Petitioner has no other avenue available to him in state court to assert this claim. He asserted this claim in the trial court, but asserted other claims on appeal.  There is no procedural vehicle available to him to return to state court and appeal the denial of this claim.  It is procedurally defaulted.  Again, Petitioner's only explanation of cause for failing to exhaust state court remedies pertained to attorney Kelley's representation of him on appeal in 2003. The argument that his sentence was void due to the erroneous inclusion of post-release control was raised for the first time seven years later in Petitioner's Motion for Re-sentencing filed in June 2010.  This claim has been procedurally defaulted.

Even if this claim were properly exhausted and not procedurally defaulted, it could not

-29-

be asserted in this habeas petition.  Petitioner contends that the inclusion of the post-release control rendered his sentence void as a matter of Ohio law.  Although he attempts to include this claim under the umbrella of his claim that his guilty plea was not voluntarily, knowingly, and intelligently made, he continues to assert that it is contrary to Ohio law for a person serving a fifteen year to life sentence to receive post-release control as part of his sentence.  A federal habeas court sitting in review of a state court judgment cannot second guess a state court's decision concerning matters of state law. *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir.2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal.").  A claim based solely on an error of state law cannot be redressed through the federal habeas process. *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001).

### III.  Third Ground for Relief

Finally, in his third ground for relief, Petitioner asserts he was denied the effective assistance of trial counsel.  He contends his trial counsel: (1) failed to inform the court that his plea agreement did not include a period of post-release control; (2) failed to object to the post-release control portion of his sentence and did not advise him of his right to appeal; (3) failed to inform him of the term of post-release control prior to his plea hearing; (4) led him to believe he would be sentenced to six years for involuntary manslaughter; and (5) failed to raise any obvious defense to the murder charge.  Each of these claims is unexhausted in the state courts and also procedurally defaulted.

Petitioner's claims of ineffective assistance of trial counsel which are based on counsel's

-30-

alleged failure to assert arguments, objections or defenses during trial should have been raised on direct appeal.  Petitioner's direct appeal filed on February 25, 2003 was dismissed on procedural grounds and his Motion to file a Delayed Appeal was denied.  His Motion to Re-open Appeal pursuant to Ohio Appellate Rule 26(b) was based on claims of ineffective assistance of appellate counsel, not ineffective assistance of trial counsel.  This Motion was also denied on procedural grounds.  He did not exhaust these claims on direct appeal of his conviction.

Petitioner's claims of ineffective assistance of trial counsel which are based on advice counsel allegedly gave to Petitioner would not appear on the record and should have been raised in a post-conviction petition or motion.  Although he asserted six claims of ineffective assistance of trial counsel in his Motion to Withdraw Guilty Plea, he did not raise these claims on appeal of the denial of that Motion.  *See State of Ohio v. Rolling*, No. 95473, 2011 WL 243981 (Ohio App. 8 Dist. Jan. 13, 2011).  He did not assert these claims in his Motion for Re-sentencing, and did not he raise them on his appeal of the denial of that Motion.

Furthermore, there is no procedural vehicle by which Petitioner can return to state court to assert them.  As stated above, his direct appeals have been foreclosed and he has already filed his post-conviction motions and petitions.  Return to state court would be futile.

Furthermore, Petitioner has not demonstrated that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *See Maupin*, 785 F.2d at 138; *Hutchison*, 303 F.3d at 735; *Combs*, 205 F.3d at 274-75.  Although ineffective assistance of counsel can, in some instances, be cause to excuse procedural default, there is no reasonable suggestion that the failure of attorney Kelly to file an appellate brief in

-31-

connection with Petitioner's Motion for Leave to File Delayed Appeal caused Petitioner to fail to exhaust his claims of ineffective assistance of trial counsel in his original appeal, or through post conviction proceedings initiated in 2008.  *Hargrave–Thomas*, 374 F.3d at 388.  There is no suggestion in the Petition that Ms. Kelly's representation of Petitioner in 2003 provides cause to excuse his default of these claims.

For the foregoing reasons, Petitioner's claims are unexhausted, and return to state court would be futile.

**CONCLUSION**

For all the foregoing reasons, the Petition for a Writ of Habeas Corpus (ECF  No. 1) is denied and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed.R.App.P. 22(b).

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 9/10/12                               United States District Judge

-32-